NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

OCT 31 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LARRY WILLIAM CORTINAS, | No. 15-17174 |
| Plaintiff-Appellant, | D.C. No. 1:13-cv-01229-AWI-SAB |
| v. | |
| M. PORTILLO, Correctional Officer; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted August 13, 2018
San Francisco, California

Before: BEA and MURGUIA, Circuit Judges, and SOTO,** District Judge.

Plaintiff-Appellant Larry William Cortinas appeals the district court's

decision to dismiss his 42 U.S.C. § 1983 action for failure to exhaust his

administrative remedies according to the Prison Litigation Reform Act ("PLRA"),

42 U.S.C. § 1997e(a), and the district court's decision to deny Cortinas' motion for

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable James Alan Soto, United States District Judge for the District of Arizona, sitting by designation.

discovery and motion to continue his evidentiary hearing. We have jurisdiction pursuant to 28 U.S.C. §§ 1331, 1291, and for the reasons explained below, we affirm.

1.      We review a district court's legal rulings on exhaustion *de novo*, but we review the district court's factual findings on disputed issues of material fact for clear error. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc). Under the PLRA, prisoners must exhaust all available administrative remedies prior to bringing a lawsuit related to prison conditions. 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense, which defendants must plead and prove. *Jones v. Bock*, 549 U.S. 199, 211–12 (2007). A prisoner is excused from the exhaustion requirement if the administrative remedies are effectively unavailable to the prisoner. *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016); *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010). In *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), the Ninth Circuit held that improper screening of an inmate's administrative grievances renders administrative remedies effectively unavailable. *Id*. In other words, according to *Sapp*, if "prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." *Id*.

Cortinas first argues that his administrative remedies were "effectively unavailable" to him under *Sapp* because his appeal was improperly screened.

Cortinas' appeal was cancelled because he purportedly refused to comply with a mandatory interview at the second formal level of review, but Cortinas contends that he never refused to be interviewed. Indeed, Cortinas asserts that he was never informed of the interview or otherwise asked to be interviewed. And, the district court found that defendants failed to carry their burden to prove that Cortinas refused to be interviewed at the second level of review, and therefore, that the prison officials properly cancelled Cortinas' appeal.[1]

However, on these facts, defendants' failure to conduct the mandatory interview did not excuse Cortinas' obligation to exhaust available administrative remedies. The Ninth Circuit has explained that "[t]he obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original). Here, some remedy was available to Cortinas because he could have appealed his improper cancellation. *See* California Code of Regulations, Title 15 § 3084.6(a)(3) and (e) (inmate can appeal cancellation decision separately pursuant to the rules in § 3084.6(c), and if inmate prevails, cancelled appeal can be considered at the

---

[1] Officer D.B. Hernandez attempted to interview Cortinas but did not speak with Cortinas directly. Instead, the officer in Cortinas' unit informed Officer Hernandez that Cortinas refused to be interviewed. It is unclear why the investigating officer did not speak with Cortinas directly, or why there is not a procedure in place to document a prisoner's refusal to participate, such as a signature on a form. Indeed, it appears this improper cancellation of Cortinas' appeal could have been avoided if some simple procedures were put in place.

discretion of the appeals coordinator). Because Cortinas could have appealed his cancellation decision, this case is distinguishable from *Sapp*, and the improper cancellation of his appeal did not render administrative remedies effectively unavailable to him. *See Wilson v. Zubiate*, No. 16-16621, 718 F. App'x 479, 482 (9th Cir. 2017) ("[Plaintiff] had the possibility of appealing the cancellation decision and therefore cannot show that he was 'thwarted by improper screening' under *Sapp*, 623 F.3d at 823.").

2.     Cortinas also argues that even though prison regulations permitted him to appeal the improper cancellation, this administrative remedy was effectively unavailable to him because the prison failed to provide proper notice of how to appeal the improper cancellation. Specifically, Cortinas claims that he never received a letter, dated July 30, 2012, which was purportedly attached to his returned appeal, and explained that he could appeal his cancellation decision. According to Cortinas, he therefore did not know the steps required to appeal his improper cancellation.

However, there is sufficient evidence in the record to suggest that Cortinas received adequate notice of the appeals options and therefore that this remedy was available to him. "Relevant evidence in [demonstrating that some relief remains available includes] statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial

evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure[s] . . . ." *Valoff*, 422 F.3d at 937.

The district court concluded that this administrative remedy was available to Cortinas for several reasons. First, the district court concluded that Cortinas did receive the July 30, 2012 letter, which informed him of the option to appeal his cancellation. The district court stated that its conclusion was based on the customs and practice of the Office of Appeals, which state that when an appeal is returned to an inmate a decision letter is attached.[2] The district court also based its conclusion on the Magistrate Judge's finding that Cortinas had previously filed 18 appeals to the third level, each of which notified him of his right to appeal, and Cortinas' own admission that he received the third level rejection referencing "see attached letter."

---

[2] Under the circumstances of this case, the "custom and practice" of the Office of Appeals is weak evidence to support that Cortinas received the July 30, 2012, as any person who has sent an email without attaching a required document can attest. The district court also relied on Cortinas' receipt of the rejection notification that clearly stated "see attached Third Level response" and that Cortinas had previously filed 18 appeals to the third level. It seems as though prisons could avoid this issue by implementing simple policies to better ensure that prisoners receive all necessary correspondence related to their appeals. For example, in this case, defendants would not have needed to rely on such evidence if the prison asked prisoners to sign for their letters with a confirmation of attachment or number of pages.

Second, the district court concluded that this administrative remedy was available to Cortinas based on the fact that Cortinas had filed previous appeals to the third level, which would have contained decision letters referencing the relevant regulations for appealing his cancellation. And, Cortinas received his cancelled appeal for this case, which stated "see attached Third Level response." Moreover, the relevant procedures and regulations were published and available in the prison library. Even if inmates have limited time to research, Cortinas would have had the citation to the relevant procedures from his past cancelled appeals, and this citation would have provided an appropriate and efficient starting point.

Because the district court concluded that Cortinas received the July 30, 2012 letter, and because of the evidence that the applicable regulations were published in the prison library and Cortinas had received cancellation decisions in the past, this Court finds that the administrative remedy was available to Cortinas and we affirm the district court's ruling that Cortinas failed to exhaust his available administrative remedies.

3.     Finally, Cortinas argues that the district court abused its discretion in denying Cortinas' motion for discovery and motion to continue the evidentiary hearing. "A district court is vested with broad discretion to permit or deny discovery, and a decision 'to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial

prejudice to the complaining litigant.'" *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citing *Hallett v. Morgan*, 287 F.3d 1193, 1212 (9th Cir. 2002)). Additionally, "[t]he decision to grant or deny a requested continuance lies within the broad discretion of the district court, and will not be disturbed on appeal absent clear abuse of that discretion." *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985).

Cortinas failed to demonstrate that the district court's denial of his request for additional discovery of defendants' privileged documents prejudiced him because he failed to assert what he would have discovered had he been given the additional discovery. Mere speculation of prejudice is insufficient to overturn a discovery ruling. *See Martel v. Cty. of Los Angeles*, 56 F.3d 993, 996 (9th Cir. 1995). Moreover, during the hearing, Cortinas agreed to allow the district court to review the privileged discovery *in camera* rather than reviewing it himself. Therefore, the district court did not abuse its discretion in denying Cortinas' motion for discovery.

Additionally, Cortinas failed to demonstrate that he suffered prejudice as a result of the denial of his request for a continuance. To obtain reversal based on denial of a motion to continue, the appellant must "show at a minimum that he has suffered prejudice as a result of the denial of his request." *Flynt*, 756 F.2d at 1359 (citations omitted). According to Cortinas, a continuance "would have provided

[him] with an ample amount of time to scour [additional discovery] for everything that was relevant to his evidentiary hearing" and might have "uncovered" more reasons why his "administrative remedies were effectively exhausted." Cortinas does not explain what that evidence might have been. We will not find abuse of discretion unless, after carefully evaluating several factors, we conclude that the denial was "arbitrary or unreasonable." *Id*. at 1358. Therefore, this Court finds that the district court did not abuse its discretion in denying Cortinas' motion for discovery and motion to continue the evidentiary hearing.

**AFFIRMED.**

15-17174

*Cortinas v. Portillo*, No. 15-17174

Bea, Circuit Judge, concurring:

I concur with the majority's disposition in this case. I write separately to explain my concerns with the sentiment expressed in the footnotes.

In essence, the footnotes suggest that the prison would be well-served to implement a system in which prisoners sign forms to indicate 1) their refusal to participate in an interview; or 2) their receipt of all necessary correspondence related to their appeals. I would refrain from such speculation.

In the California Department of Corrections, administrative appeals are assigned a log number and recorded in a computerized database called the Inmate/Parolee Appeals Tracking System. That system is managed by the Appeals Coordinator at each prison, who reports to the Office of Appeals in Sacramento. Here, the Department of Corrections supplied records showing forty-four appeals filed by Cortinas, ten of which had been "screened out" and twenty-six of which were either pending review or rejected on the merits. For each appeal that had been "screened out," the records indicated a reason—such as "missing documentation" or "exhaust[ion]"—logged, presumably, by the prison staff.

Would it be beneficial for prisoners to sign when refusing an interview? Would it help if the Department of Corrections required prisoners to sign for every

document, confirm the number of pages received, and upload that to the Inmate/Parolee Appeals Tracking System? Perhaps. But perhaps there are valid reasons for *not* instituting such a system, based on considerations of cost, prison safety, or administrative practice. Prison administration is an area in which we lack expertise. To paraphrase the Supreme Court's guidance in the educational context, given our "lack of specialized knowledge and experience," the "judiciary is well advised to refrain" from opining on such matters. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973).

FILED

OCT 31 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Cortinas v. Portillo*, No. 15-17174

Murguia, Circuit Judge, concurring:

I concur in the majority's disposition but write separately to note that I would not rely on the district court's factual conclusion that Cortinas received the July 30, 2012 letter explaining that Cortinas could appeal his improper cancellation. The district court concluded that Cortinas received the July 30, 2012 letter in part because it is the custom and practice of the prison's Office of Appeals that when an appeal is returned to an inmate, a decision letter is attached. As the memorandum disposition notes, that it is the "custom and practice" of the Office of Appeals to attach the letter is not necessarily evidence that the letter was attached in this case. Asking Cortinas to prove that he did not receive the letter in this case would require Cortinas to prove a negative. However, because Cortinas did in fact receive cancelled appeals in the past that referenced the relevant regulations, had access to the prison library where the applicable regulations about appealing his cancellation decision were published, and received his cancelled appeal in this case, I agree that the administrative remedy of appealing his cancellation decision was effectively available to him. And, because Cortinas failed to exhaust this administrative remedy, I agree that the district court properly dismissed Cortinas' action.